[Cite as *State v. Guzzi*, 2015-Ohio-4426.]

**IN THE COURT OF APPEALS**

**ELEVENTH APPELLATE DISTRICT**

**LAKE COUNTY, OHIO**


| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2014-L-101** |
| JOSEPH T. GUZZI, | : | |
| Defendant-Appellant. | : | |


Criminal Appeal from the Lake County Court of Common Pleas, Case No. 13 CR 000607.

Judgment: Affirmed.


*Charles E. Coulson*, Lake County Prosecutor, and *Teri R. Daniel*, Assistant Prosecutor, Lake County Administration Building, 105 Main Street, P.O. Box 490, Painesville, OH 44077 (For Plaintiff-Appellee).

*Charles R. Grieshammer*, Lake County Public Defender, and *Vanessa R.* Clapp, Assistant Public Defender, 125 East Erie Street, Painesville, OH  44077 (For Defendant-Appellant).


THOMAS R. WRIGHT, J.

{¶1}    Appellant Joseph T. Guzzi pled no contest to two counts of rape, a felony of the first degree, in violation of R.C. 2907.02(A)(2).  He was sentenced to two, nine-year prison terms to be served concurrently.  On appeal, Guzzi claims that the trial court erred in overruling his motion to suppress his statements to the police.  For the following reasons, we affirm.

{¶2} On August 12, 2013, detectives from the Lake County Sherriff's office sought to question Guzzi on a matter unrelated to his charges. They believed he could help them with their investigation regarding the rape of a sixteen-year-old girl. This girl had reportedly been raped while babysitting M.N., who turned out to be Guzzi's ten-year-old victim. Although the detectives knew that Guzzi was present on the night that the sixteen-year-old was raped, he was not a suspect. Moreover, the detectives had no knowledge that Guzzi had victimized M.N.

{¶3} Detectives Donald Seamon and his partner arrived at Guzzi's residence and requested that he accompany them to the station to give a statement. Guzzi said that he wanted to help out, but did not have a car. The detectives therefore offered him a ride. Guzzi was then transported in an unmarked police car to the station. He was not restrained in any way.

{¶4} Upon arrival, the detectives escorted Guzzi to an interview room where he was permitted to keep his cell phone. The detectives removed their weapons before entering the room and activated a video and audio recording device.

{¶5} At the very beginning of the interview, the detectives stated that they just wanted to talk to Guzzi, and they informed him, "You are not under arrest. You are not in custody. You are going home when we are done talking to you. Okay. All we are going to do is talk to you. No matter what we talk about today you are going home."

{¶6} During the beginning of the interview, the detectives and Guzzi largely talked about his relationship with the babysitter, and what he knew about the babysitter and her relationship with members of M.N.'s family and circle of friends. However, Guzzi briefly mentioned his relationship with M.N. and said that he would never harm

her. He also said that they frequently played video games at one another's homes. After telling the detectives that M.N. would sometimes play video games in his room, Guzzi remarked that he has no adult pornographic material in his room, but that if he did, M.N. would not find them.

{¶7} At this point, the interview began to focus on M.N., Guzzi, and pornography instead of the sixteen-year-old's rape. Upon further questioning, Guzzi admitted that he has some "guy magazines" in his room, but claimed they were hidden. He also admitted that he has pornographic movies in his room. Guzzi said that he told M.N. that he would give her these movies when she turned 18. When asked how he and M.N. got on the topic of pornography, Guzzi claimed that he caught her on pornographic websites on her tablet. He also said that M.N. was confused about her sexual orientation.

{¶8} The interview then briefly returned to the babysitter rape investigation, and Guzzi revealed that he was afraid of the babysitter's mom because she is a "cop." Thereafter Guzzi informed them that once while sleeping near the babysitter, he awoke with his hand on her breast. Upon further questioning, the detectives asked whether a similar incident had occurred with M.N. Guzzi denied that anything of that nature occurred with M.N.

{¶9} After about an hour of questioning, the detectives took a break. They told Guzzi to "just relax," asked him if he wanted anything to drink, and told him to "sit tight" for a minute.

{¶10} Upon their return, the interview resumed with an immediate focus on M.N., Guzzi, and pornography. The detectives informed Guzzi that M.N. told them that Guzzi

was helping her explore her sexuality by looking at pornography. Guzzi then confessed that he would bring up "categories" of pornography on her tablet without actually showing her videos. Guzzi continued to deny that he showed M.N. any pornography. However, upon further questioning, Guzzi admitted that he showed M.N. a variety of pornography to explain different sexual orientations to her. Guzzi also admitted to allowing M.N. to watch one pornographic video a week. Guzzi later admitted that he went to counseling "for this stuff" when he was 10 or 12 years old. He also stated that he almost molested his sister when she was a toddler.

{¶11} The detectives told Guzzi that M.N. had told them more information than he had told them, and they needed him to be honest with them. The detectives stated that M.N. needed help and that "[they] need[ed] [Guzzi's] help to help [M.N.]." With a desire to help M.N. get the counseling she needed, Guzzi admitted that he stuck his fingers in her vagina three times. Shortly thereafter, the detectives ended the interview and took Guzzi home. They obtained a warrant and arrested Guzzi the next day.

{¶12} A grand jury eventually indicted Guzzi for three counts of rape in violation of R.C. 2907.02(A)(1)(b) and one count of disseminating materials harmful to juveniles in violation of R.C. 2907.31(A)(1). Guzzi moved to suppress his statements to the detectives because they failed to secure a waiver of his *Miranda* rights and since his statements were involuntary. The trial court overruled the motion. Guzzi subsequently entered a no contest plea to two amended counts of rape in violation of R.C. 2907.02(A)(2). This appeal follows.

{¶13} As his sole assignment of error, Guzzi asserts:

{¶14} "The trial court erred when it denied the defendant-appellant's motion to suppress in violation of his due process rights under the Fifth, Sixth, and Fourteenth Amendments of the United States Constitution and Section 10, Article 1 of the Ohio Constitution."

{¶15} Within this assignment, Guzzi reasserts his arguments that his statements to the police should have been suppressed because the detectives failed to obtain Guzzi's waiver of his *Miranda* rights and his statements were involuntary.

{¶16} "An appellate court's review of a motion to suppress presents a mixed question of law and fact. *State v. Long* (1998), 127 Ohio App.3d 328, 332, 713 N.E.2d 1. In reviewing the trial court's findings of fact, an appellate court must give due weight to inferences drawn from those facts by the trial court because the trial court is in the best position to resolve questions of fact and evaluate the credibility of witnesses. *State v. Hopfer* (1996), 112 Ohio App.3d 521, 548, 679 N.E.2d 321, appeal not allowed (1996), 77 Ohio St.3d 1488, 673 N.E.2d 146. Accordingly, an appellate court reviews a trial court's findings of fact only for clear error. *State v. Russell* (1998), 127 Ohio App.3d 414, 416, 713 N.E.2d 56. A trial court's legal conclusions, however, are reviewed by an appellate court de novo. *Id.* at 416." *State v. Yeager*, 9th Dist. Summit Nos. 21091, 21112, 21120, 2003-Ohio-1808, ¶5.

{¶17} The requirement that police administer *Miranda* warnings is triggered only when interrogations are custodial in nature. *State v. Lynch*, 98 Ohio St.3d 514, 2003-Ohio-2284, ¶47 (citation omitted). Custodial interrogation means "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise

5

deprived of his freedom of action in any significant way." *Miranda v. Arizona*, 384 U.S. 436, 444 (1966).

{¶18} In determining whether an individual is in custody for purposes of *Miranda*, the court considers "the circumstances surrounding the interrogation" and whether, under those circumstances, "a reasonable person [would] have felt he or she was not at liberty to terminate the interrogation and leave." *Thompson v. Keohane*, 516 U.S. 99, 112 (1995). A non-custodial interrogation becomes custodial when there is a "formal arrest or restraint on freedom of movement" similar to that of a formal arrest. *California v. Beheler*, 463 U.S. 1121, 1125 (1983) (citation omitted). A determination of whether an interrogation is custodial or non-custodial depends on the objective circumstances of the interrogation, not the subjective views held by either the officer or the person being questioned. *Stansbury v. California*, 511 U.S. 318, 323 (1994).

{¶19} In this case, Guzzi argues the following factors demonstrate that he was in custody for *Miranda* purposes: (1) the detectives showed up armed and unannounced; (2) Guzzi was not advised that he did not have to speak with the police, (3) Guzzi was separated from his parents when he was questioned; (4) Guzzi was led through five different doors at the police station to the interview room, and two of those doors required a key card to enter; (5) he was instructed to have a seat in the interview room and waited in isolation for a brief period; (6) the police informed him that he could go home when *they* were done talking to them; (7) he was not informed that *he* could terminate the interview; and (8) he was questioned for two hours without being informed of his *Miranda* rights.

6

{¶20} In support, Guzzi directs us to *State v. Buckholz*, 11 Ohio St.3d 24 (1984), that involved comparable facts and where the court held that a *Miranda* warning was required. However, the issue before the court was whether *Miranda* safeguards are implicated only in felony investigations. It held that the warnings are required regardless of whether the suspected crime is a misdemeanor or a felony.

{¶21} Further, even assuming the facts in *Buckholz* are analogous to this case, the Ohio Supreme Court did not hold that the defendant was in custody as a matter of law based on those facts. Rather, the Ohio Supreme Court stated, "[t]he state in the case at bar has not raised on appeal the question of whether [the defendant] was subject to custodial interrogation at the time he gave the second statement. In light of the state's argument that *Miranda* is inapplicable solely because [the defendant] was convicted of a misdemeanor, we assume that the state concedes that [the defendant] was in custody and subjected to interrogation." *Buckholz*, 11 Ohio St.3d at 26, fn. 2. Consequently, other courts have found *Buckholz* is of limited value when the state contests whether the defendant was in custody. *State v. Lawson*, 5th Dist. Licking No. 08-CA-52, 2009-Ohio-115; *State v. Springer*, 135 Ohio App.3d 767 (7th Dist.1999). As the state has contested custody in this case, *Buckholz* is inapplicable.

{¶22} Furthermore, Guzzi's arguments ignore that he was never restrained by the police, that he voluntarily went to the police station, and that the police informed him that he was not in custody or under arrest. Further, the detectives placed no emphasis on the "we" when they stated that the interview would end "when we are done talking with you." Given the prior notifications that Guzzi was not under arrest or in custody, a reasonable person would not have felt that he was not at liberty to terminate the

7

interview and leave. Finally, the detective's statement that Guzzi should "sit tight" did not negate their prior statement that he was not in custody or under arrest. Accordingly, we find that Guzzi was not in custody for *Miranda* purposes at the time of his incriminating statements.

{¶23} Next, Guzzi argues that his developmental disabilities and problems interacting with people, combined with the detectives' pressure, made his statements involuntary. Specifically, the defense claims that the police used the following tactics as psychological pressure: expressing confidence in the suspect's guilt; focusing on why rather than if the suspect committed the act; relating the suspect's motivation for committing the act; minimizing the moral seriousness of the offense; casting blame on the victim or society; claiming that the victim made allegations when she had not; and claiming that the victim would not receive counseling without Guzzi's help. Guzzi was a high school graduate and was not taking any prescription medications at the time of his interview.

{¶24} In determining the voluntary nature of a waiver of a criminal suspect's *Miranda* rights, a reviewing court will look at the "totality of the circumstances." *State v. Gumm*, 73 Ohio St.3d 413, 429, 1995-Ohio-24, 653 N.E.2d 253 (1995). In deciding whether a defendant's statement is voluntary, the trial court should consider factors including, "the age, mentality, and prior criminal experience of the accused; the length, intensity, and frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement." (Citation omitted.) *State v. Worley*, 11th Dist. Trumbull No. 2001-T-0048, 2002-Ohio- 4516, ¶161. "A suspect's decision to waive his Fifth Amendment privilege against compulsory self-incrimination is

made voluntarily absent evidence that his will was overborne and his capacity for self-determination was critically impaired because of coercive police conduct." *State v. Dailey*, 53 Ohio St.3d 88, 559 N.E.2d 459 (1990), paragraph two of the syllabus. Contrary to Guzzi's assertions, his statements were voluntary and were not made in response to police coercion, threats, or misconduct.

{¶25} Accordingly, the sole assignment of error lacks merit, and the judgment of the Lake County Court of Common Pleas is affirmed.


CYNTHIA WESTCOTT RICE, J., concurs,

COLLEEN MARY O'TOOLE, J., dissents with a Dissenting Opinion.


_____


COLLEEN MARY O'TOOLE, J., dissents with a Dissenting Opinion.

{¶26} I find merit with the first issue presented by Mr. Guzzi under his assignment of error: he was subjected to custodial interrogation without benefit of his *Miranda* rights. I would reverse and remand, instructing the trial court to grant the motion to suppress. I would not reach the second issue raised: i.e., whether his statements were involuntary.

{¶27} The police differentiate between an "interview" and an "interrogation." The purposes of an interview are to "[o]btain relevant information about the situation or crime"; [e]stablish rapport with the subject"; and "gather information and determine facts." Ohio Peace Officer Training Commission, Education & Policy Section, *Peace*

9

*Officer Basic Training*, *Interview & Interrogation*, *Unit 11 – Topic 15*, at 10 (Jan. 1, 2014). It "generally has a non-accusatory tone." *Id.* By contrast, an interrogation is used not merely to gather information relevant to an investigation, but to "establish innocence," or to obtain information leading "to a *confession or an admission*." *Id.* at 13.

{¶28} In this case, the detectives initially conducted an interview with Mr. Guzzi: they simply were trying to gather information regarding the alleged rape of the sixteen-year-old babysitter. However, during the course of the interview, Mr. Guzzi began giving information about his conduct with the child being babysat – M.N. He acknowledged allowing this ten-year-old to see pornography. The detectives took a break, telling Mr. Guzzi to "just relax," and "sit tight," and leaving him alone in the interrogation room. When the detectives returned, they concentrated their questions on Mr. Guzzi's conduct with M.N., eliciting the information which led to Mr. Guzzi's indictment. The "interview" had clearly become an "interrogation." The question is, whether the interrogation was custodial, requiring the detectives to give Mr. Guzzi *Miranda* warnings.

{¶29} "The right to Miranda warnings is grounded in the Fifth Amendment's prohibition against compelled self-incrimination. *Moran v. Burbine* (1986), 475 U.S. 412, 420, * * *. Police are not required to administer Miranda warnings to every individual they question. *State v. Biros* (1997), 78 Ohio St.3d 426, 440, * * *. Only custodial interrogations trigger the need for Miranda warnings. Id., citing *Oregon v. Mathiason* (1977), 429 U.S. 492, 495, * * *.

{¶30} "An individual is in custody for purposes of Miranda when there has been a formal arrest or when the person's freedom of movement is restrained such that a

reasonable person in the suspect's position would believe that he or she is under arrest. *State v. Petitjean* (2000), 140 Ohio App.3d 517, 523, * * *; *Berkemer v. McCarty* (1984), 468 U.S. 420, 442, * * *. A police officer's subjective view of whether the person is in custody is not relevant to the analysis. *Stansbury v. California* (1994), 511 U.S. 318, 319, * * *." (Parallel citations omitted.) *State v. Tate*, 7th Dist. Mahoning No. 07 MA 130, 2008-Ohio-3245, ¶41-42.

{¶31} First, Mr. Guzzi was told, at the break in questioning, to remain where he was, having already been told by the detectives he would be taken home when they were done with him – not when he chose to terminate the proceedings. Second, the interrogation room is deep inside the Sheriff's department, behind five doors. None of these lock from inside – but what civilian, unfamiliar with the premises, would know this? Finally, there is the simple fact that Mr. Guzzi does not drive, and could not leave without being driven by the detectives. Under these circumstances, a reasonable person would not feel free to leave, or end the interrogation. He or she would feel under arrest. Further, the record makes clear Mr. Guzzi suffers from certain developmental disabilities, which is apparent from the DVD of the interrogation. The learned trial judge perceived this, as evidenced by his questioning of the testifying detective at the suppression hearing.

{¶32} I think there was a sufficient limitation on Mr. Guzzi's freedom to invoke *Miranda*.

{¶33} I respectfully dissent.

11