[Cite as *State v. Neuroth*, 2018-Ohio-905.]

**IN THE COURT OF APPEALS**

**ELEVENTH APPELLATE DISTRICT**

**ASHTABULA COUNTY, OHIO**

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | CASE NO. 2017-A-0054 |
| | : | |
| GABRIELLE ANTOINETTE JOSEPHINE NEUROTH a.k.a. NEUROTH, GABRIELLE A., | : | |
| | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Ashtabula County Court of Common Pleas, Case No. 2015 CR 00561.

Judgment: Affirmed.

*Nicholas A. Iarocci,* Ashtabula County Prosecutor, and *Shelley M. Pratt,* Assistant Prosecutor, Ashtabula County Courthouse, 25 West Jefferson Street, Jefferson, OH 44047 (For Plaintiff-Appellee).

*Marie Lane,* Ashtabula County Public Defender, Inc., 4817 State Road, #202, Ashtabula, OH 44004 (For Defendant-Appellant).

CYNTHIA WESTCOTT RICE, J.

{¶1} Appellant, Gabrielle Neuroth, appeals from the judgment of the Ashtabula County Court of Common Pleas, denying her motion to suppress evidence. At issue is whether the arresting officers had consent to enter and search the motel room appellant and her co-defendant, Jason Allen ("Allen), were occupying. For the reasons discussed in this opinion, we affirm.

{¶2} On September 28, 2015, Ashtabula County Sheriff's Deputy Jay Thomas was dispatched to the Ho-Hum Motel. The dispatch was prompted by an anonymous tip that a strong chemical odor was emanating from one of the end rooms. Deputy Thomas is certified by the Ohio Bureau of Criminal Investigation Clandestine Lab Unit. As part of his training, he knows the methods and processes relating to the manufacture of methamphetamine ("meth"). He also has a detailed understanding of the equipment necessary to manufacture the drug as well as the odors and dangers related to its manufacture.[1]

{¶3} En route to the motel, Deputy Thomas received a second report of a possible stolen vehicle. Dispatch provided the deputy with a description of the vehicle and its license-plate number. The deputy responded to the reports along with Sergeant Truckey. The officers met at the motel and approached the subject room from an angle they could not be seen by the occupants. The officers observed the possible stolen vehicle parked in front of the room. Upon approaching the room's door, they heard voices inside. Deputy Thomas knocked on the door and a female responded, "hold on honey, we're getting dressed." The officer did not identify himself. After approximately 60 seconds, he knocked again and received a similar response, but no one answered the door.

{¶4} Deputy Thomas became suspicious that the occupants may be attempting to leave the room from a rear window. He accordingly walked to the rear of the building

---

1. The deputy testified, over a 10-year period, he has investigated "well-over a hundred" meth labs. Moreover, he testified the manufacture of meth is very unsafe "[b]ecause of the exothermic reaction and the flammable liquid being present, a lot of times the bottles will fail because you have the - - the exothermic reaction occurring, and it compromises the plastic bottle, and it almost creates like a flamethrower effect, because you have a pressurized bottle with flammable liquid inside it, and it's pressurized and actually will - - I've seen houses burn down. I've seen people burned up. I mean, it's - - it's bad."

to make sure there were no flight attempts. Sergeant Truckey continued to knock and, between two and five minutes after the officers' arrival, Allen answered the door. Deputy Thomas, who was approximately 30 feet away, could hear the sergeant speaking with Allen. Deputy Thomas stated that the entryway included a screen door as well as a main door and Sergeant Truckey was standing within the "fold of the screen door right at the threshold of the door."

{¶5} Deputy Thomas noted Allen was shirtless and wearing only boxer shorts and, inside the room, appellant was also topless and donning only underwear. The pair appeared extremely nervous, with trembling hands and speaking in a fast and broken manner. Allen was told that the officers were investigating a possible stolen vehicle which matched the vehicle in the parking lot. According to Deputy Thomas, Allen appeared relieved after being so advised and retrieved a document indicating he and a third-party had entered an agreement for the sale of the vehicle. Allen subsequently invited the officers into the room to discuss the nature of the agreement. Deputy Thomas asked Allen if there were any other occupants in the room, who responded in the negative. He then asked whether he could look to be certain no one else was in the room. Allen consented and as the deputy proceeded into the room, he recognized the odor of ammonia gas which, in his training and experience, is unique to the manufacture of meth. He noted the odor was faint, but was sufficient to support the conclusion that an active lab was present.

{¶6} Given the odor, the deputy asked if he could search the couple's belongings and was given permission. He subsequently found a pair of nitrile gloves, which are commonly used in the manufacture of meth. Due to the deputy's apparent

3

concern that an active lab was present and his testimony regarding the dangers of meth production, he asked Allen and appellant to leave the room. And Sergeant Truckey escorted them outside. As the deputy peered under the bed, he noticed the fabric of the box spring was sagging. He touched the area and felt a firm object in the box spring. Upon further inspection, the deputy discovered chemical bottles and a gas generator. Appellant and Allen were placed under arrest.

{¶7} According to appellant, she was awakened by knocks at the motel door. She answered the knocks stating, "hold on, honey, we're coming." She then proceeded to retrieve her clothing, which was spread throughout the room. After about the third knock, appellant stated the law enforcement officers identified themselves and Allen opened the door. Appellant maintained once the door was opened, an officer placed his foot in the doorway and entered the room without permission. Appellant stated Sergeant Truckey proceeded to ask Allen about the alleged stolen vehicle, at which point, Deputy Thomas entered the room without permission. She stated neither she nor Allen gave the deputy permission to search the room or their belongings. Nevertheless, he conducted the search, they were removed from the room, placed in handcuffs, and eventually arrested.

{¶8} Appellant was indicted on one count of illegal manufacture of drugs, in violation of R.C. 2925.04(A)(C)(3)(b), a felony of the first degree; aggravated possession of drugs, in violation of R.C. 2925.11(A)(C)(1)(d), a felony of the first degree; one count of illegal assembly or possession of chemicals for the manufacture of drugs, in violation of R.C. 2925.041(A), a felony of the third degree; and one count of

4

tampering with evidence, in violation of R.C. 2921.12(A)(1), a felony of the third degree. Appellant pleaded not guilty to the charges and filed a motion to suppress evidence.

{¶9} After a hearing, the trial court denied the motion. Appellant subsequently pleaded no contest to count two, attempted aggravated possession of drugs; count three, illegal assembly or possession of chemicals for the manufacture of drugs; and count four, tampering with evidence. The plea was accepted and appellant was sentenced to a two-year prison term on count two; a two-year term on count three; and a two-year term on count four. The sentences were ordered to be served concurrently. Appellant now appeals and assigns the following as error:

{¶10} "The trial court erred in overruling appellant's motion to suppress."

{¶11} "'An appellate court's review of a motion to suppress presents a mixed question of law and fact. *State v. Long* (1998), 127 Ohio App.3d 328, 332, * * *. In reviewing the trial court's findings of fact, an appellate court must give due weight to inferences drawn from those facts by the trial court because the trial court is in the best position to resolve questions of fact and evaluate the credibility of witnesses. *State v. Hopfer* (1996), 112 Ohio App.3d 521, 548, * * * appeal not allowed (1996), 77 Ohio St.3d 1488, * * *. Accordingly, an appellate court reviews a trial court's findings of fact only for clear error. *State v. Russell* (1998), 127 Ohio App.3d 414, 416, * * *. A trial court's legal conclusions, however, are reviewed by an appellate court de novo. *Id.* at 416.' *State v. Yeager,* 9th Dist. Summit Nos. 21091, 21112, 21120, 2003-Ohio-1808, ¶5." (Parallel citations omitted.) *State v. Guzzi,* 11th Dist. Lake No. 2014-L-101, 2015-Ohio-4426, ¶6.

**{¶12}** Appellant challenges the trial court's conclusions (1) that Allen invited the officers into the room and (2) that Allen's and appellant's actions after entry (no protestations that the officers leave) implied they had consent to enter the room. She also argues even if they had consent to enter the room, Deputy Thomas exceeded the scope of that consent by conducting a search of the couple's belongings.

**{¶13}** Under the Fourth Amendment, "a search conducted pursuant to a valid consent is constitutionally permissible." *Schnekloth v. Bustamonte*, 412 U.S. 218, 222 (1973). "[W]hen a prosecutor seeks to rely upon consent to justify the lawfulness of the search, he has the burden of proving that the consent was, in fact, freely and voluntarily given." *Id.* (citation omitted). "To rely on the consent exception to the warrant requirement, the state must show by 'clear and positive' evidence that consent was 'freely and voluntarily' given." *State v. Posey*, 40 Ohio St.3d 420, 427 (1988) (citation omitted). "[T]he question of whether a consent to a search was in fact 'voluntary' or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances." *Schneckloth, supra*, at 227.

**{¶14}** Appellant first argues the officers lacked consent to enter the room. She maintains Sergeant Truckey placed his foot inside the door frame, thereby preventing Allen from closing the door. Further, she asserts there was no evidence that Allen expressly invited the officers into the room. We do not agree.

**{¶15}** Although the state did not have evidence contradicting appellant's testimony that Sergeant Truckey positioned his foot inside the door, Deputy Thomas testified on direct and on cross-examination, that Allen invited the officers into the room.

6

On direct, the prosecutor asked the deputy why he and the sergeant entered the room. He responded:

{¶16} Basically it was because we - - Sergeant Truckey was discussing more the - - of this issue with the truck. I mean, it was never - - discussed anything. It wasn't like discussed - - walked up to the door and said hey, you have a drug meth lab in here. It was more of a way of like kind of easing in the situation and not letting them know that we were there to investigate something more serious than - - than just the truck. And we were actually, I mean, *invited into the room to discuss this further.* (Emphasis added.)

{¶17} On cross, the deputy noted: "It wasn't  * * * like, hey, come on in and have coffee, but he's just like, he - - I mean, I - - I don't remember exactly, but *we were invited in.*" (Emphasis added.)   Moreover, Deputy Thomas testified that once they entered the room, with Allen's consent, he asked if he could look around the room to determine whether there were any other occupants in the room. At this point, the deputy identified the distinct odor of ammonia gas inside the room. He then asked whether he could look into the couple's bags. According to the deputy, both Allen and appellant gave him permission and were "completely cooperative." There was therefore prima facie evidence that Deputy Thomas had appellant's and Allen's consent to both enter the room and perform the above-mentioned searches.

{¶18} We recognize appellant testified neither she nor Allen invited or consented to the officers' entry or gave Deputy Thomas consent to search the room.

{¶19} The trial court also acknowledged this evidence, and made the following findings:

{¶20} the Court does not find Neuroth's testimony that the officers never had consent to enter or search to be credible or reliable. The Court had the opportunity to view each witness upon the stand, their manner of testifying, their physical demeanor including facial expressions and eye contact with the lawyers and the Judge. The

7

Court finds the testimony of Deputy Thomas to be truthful. The Court finds the testimony of Gabrielle Neuroth to be self-serving and unbelievable.

{¶21} In light of the deputy's testimony, as well of the lack of any protests or attempts to preclude the officers' entry and the deputy's search, we conclude the state offered clear and positive evidence that the officers had received the occupants' voluntary permission to enter the room and search the occupants' belongings. Accordingly, the trial court did not commit clear error in finding the officers had consent to enter the room. Appellant's argument to the contrary lacks merit.

{¶22} Next, appellant contends the "secondary search" of the room was beyond the scope of the consent and no exigent circumstances justified the same.

{¶23} Initiialy, appellant notes that the trial court, in its factual recitation, observed that appellant testified she and Allen were handcuffed and taken outside of the room before the meth was discovered. She further points out that the court found her testimony not credible. Nevertheless, appellant underscores this aspect of her testimony was consistent with Deputy Thomas' testimony. Regardless of whether the trial court actually found this aspect of her testimony not believable, appellant's and Allen's location at the time the meth lab was found was not essential to the court's findings that the deputy had consent and/or that the deputy's ultimate search and discovery of the meth lab was proper. The deputy testified:

{¶24} When I was done searching the entire room, like each separate bag, * * * and they basically consented to it, I just found there was a bunch of junk, and I was going to get to the bottom of that here in a minute. I was again looking for, the meth lab. I knew there was a meth lab in there somewhere, and if it was hidden in the air conditioner, I don't know, but I was going to find it; because it's again, I did not want to see, one, that bed go up, people get hurt, myself get hurt, so I continued the search. And I located it. At that

8

point they were already - - like they had already been asked to leave the room. I was doing a secondary search of the - - of the room, because I didn't find it at first. I mean, honestly, it was hidden well.

{¶25} From the foregoing testimony, it is apparent the officer believed, for safety reasons, it was necessary to evacuate the room due to the dangers relating to meth manufacturing. And, in light of his training and the surrounding circumstances, Deputy Thomas believed there was an active meth lab in the room.

{¶26} With this in mind, it is unclear that the deputy possessed the occupants' consent to search every aspect of the room. They gave the deputy consent to search for additional individuals in the room as well as consent to look through their bags. The testimony does not establish, however, that they gave the officer carte blanche to search the entire room. Assuming, arguendo, the officer's secondary search was beyond the scope of the occupants' consent, however, we hold the trial court did not err in denying appellant's motion because the deputy had probable cause and sufficient exigent circumstances to support the deputy's actions.

{¶27} A warrantless search is per se unreasonable under the Fourth Amendment subject to several exceptions. *California v. Acevedo,* 500 U.S. 565, 580 (1991). One such exception exists when there is probable cause coupled with the existence of exigent circumstances. *Kirk v. Louisiana,* 536 U.S. 635, 638 (2002).

{¶28} This court has observed:

{¶29} With respect to clandestine methamphetamine laboratories, * * * the "basic aspects of the exigent circumstances exception are that (1) law enforcement officers must have reasonable grounds to believe there is immediate need to protect their lives or others or their property or that of others, (2) the search must not be motivated by an intent to arrest and seize evidence, and (3) there must be some reasonable basis, approaching probable cause, to

9

associate an emergency with the area or place to be searched." *United States v. Rhiger*, 315 F.3d 1283 (10th Cir.2003). [Other citations omitted.]

{¶30} Applying the foregoing test, the courts have upheld limited warrantless searches when the odor of chemicals associated with methamphetamine production was detected coming from a residence, the observing officer had extensive knowledge of the particular dangers associated with an active methamphetamine lab, and there was no evidence offered that agents entered the home with an intent to arrest and seize evidence. *Rhiger,* 315 F.3d at 1290-1291; see also, *United States v. Erb* (C.A.10, 1979) 596 F.2d 412, 418 (exigent circumstances search upheld where the odor of methamphetamine production was evident, the agent had extensive experience in the matter of clandestine laboratory operations and knowledge of their inherent dangers); *United States v. Wilson* (C.A.9, 1989), 865 F.2d 215, 217; *United States v. Spinelli* (C.A.2, 1988), 848 F.2d 26, 30 (exigent circumstances included the volatile nature of chemicals used to manufacture methamphetamine, and the likelihood of explosion). But see, *United States v. Jackson* (D.Kan.2002), 199 F.Supp.2d 1081, 1090 (odor of anhydrous ammonia and suspicion of laboratory do not constitute exigent circumstances without evidence of volatile nature of chemicals and the danger of explosion); *People v. Gott* (Ill.App.2004), 346 Ill.App.3d 236, 281 Ill. Dec. 279, 803 N.E.2d 900, 907-908 (odor of chemicals and suspicion of methamphetamine lab not enough for public safety exigent circumstance without separate evidence that police were also aware of the dangerous nature of chemicals). *State v. Pape*, 11th Dist. Ashtabula No. 2004-A-0044, 2005-Ohio-4657, ¶23-24.

{¶31} The odor of the ammonia gas, along with the discovery of the nitrile gloves, and the deputy's extensive training along with evidence of the volatility and dangers associated with meth manufacturing, provided the officer with probable cause that an active lab was somewhere in the room. Accordingly, even if the search that led to the discovery of the meth lab was beyond the scope of the occupants' initial consent, we conclude there was probable cause and sufficient exigent circumstances for Deputy Thomas to proceed with an investigation of the entire room.

{¶32} Appellant's sole assignment of error is without merit.

{¶33} For the reasons discussed in this opinion, the judgment of the Ashtabula County Court of Common Pleas is affirmed.


DIANE V. GRENDELL, J.,

TIMOTHY P. CANNON, J.,

concur.