[Cite as *State v. Johnson*, 2022-Ohio-1739.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-210381 |
| | | TRIAL NO. B-1602422 |
| Plaintiff-Appellee, | : | |
| vs. | : | *O P I N I O N.* |
| KEVIN JOHNSON, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Reversed and Cause Remanded

Date of Judgment Entry on Appeal:    May 25, 2022

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Philip R. Cummings*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Timothy Young,* Ohio Public Defender, and *Allison M. Spriggs*, Assistant State Public Defender, for Defendant-Appellant.

ZAYAS, **Judge**.

**{¶1}** Defendant-appellant Kevin Johnson appeals the common pleas court's judgment denying his petition for postconviction relief on the basis of res judicata. In his petition, Johnson sets forth three grounds for relief, all challenging the testimony of the state's fingerprint expert at trial. Because Johnson submitted cogent evidence outside the record to support his postconviction claims, we hold that res judicata does not operate to bar his claims. Further, our review of the record convinces us that Johnson's petition, at least on its face, sets forth substantive grounds for relief. Therefore, we reverse the judgment of the common pleas court and remand this matter for a hearing on the merits of Johnson's petition.

## Background

**{¶2}** Kevin Johnson was indicted for four drug-related felonies: trafficking in and possession of cocaine that was found in a search of the house owned by Johnson's twin brother, Keith, and trafficking in and possession of cocaine found in the map pocket of the passenger seat and under the driver's seat of the car Johnson had been driving after leaving Keith's house. The cocaine under the driver's seat was in a vacuum-sealed bag. The vacuum-sealed bag was inside a Walmart plastic bag, which had then been placed inside a Menard's plastic bag. A fingerprint found on the Menard's bag was identified as Johnson's left thumbprint.

**{¶3}** At trial, Johnson's brother, Keith, testified that he had pled guilty to the charges related to the drugs found in the house and that Johnson had no knowledge of the drugs in the home. When he was asked if the drugs found in the car belonged to him or if he had put the drugs into the car, Keith asserted his Fifth Amendment privilege against self-incrimination. In his own defense, Johnson testified that (1) he did not know the drugs were in the car, (2) he did not place the drugs in the car, (3) he had access to his brother's home because he was in the process of rehabbing it, and (4) his brother had been using the car, where the drugs were discovered, earlier that day.

2

**{¶4}** Officer Kimberly Horning, a criminalist at the Cincinnati Police Department, testified on behalf of the state as a fingerprint expert. Prior to her testimony, Johnson objected to her testifying as an expert because he had not received an expert report, she was not disclosed as an expert witness, and her "CV" was not timely provided. The state claimed that it had provided an expert report that consisted of the evidence-examination worksheet that contained the results of the fingerprint analysis. After the trial court concluded an expert report had been provided, it conducted a *Daubert* hearing, outside the presence of the jury, and determined that Horning was qualified to testify as an expert.

**{¶5}** At trial, Horning testified that she used the ACE-V[1] method to analyze fingerprint evidence. She explained that she used cyanoacrylate fuming to retrieve "prints of value" from the plastic bags found in the car. Prints of value are those prints where "the friction ridge detail is observable" and able to be photographed. Using that process, Horning was able to obtain a latent print from the Menard's bag, which she photographed and uploaded to the Automated Fingerprint Identification System ("AFIS"). After she determined "the points on the print, the ridge event details in the print that make it unique," she ran a search on AFIS for known prints that have similar friction-ridge detail. The search returned 20 hits, one of which was Johnson. Knowing Johnson was a suspect, Horning then compared the ridge details on the latent print to Johnson's known print. She testified she was able to identify up to 20 matching identification points but she only charted 13 for purposes of testifying. When asked if her process for identifying a print was subjective, she said, "I wouldn't call it subjective at all. I mean, these have to be blindly verified by a second criminalist." In response to defense counsel's questions about her analysis, Horning referenced her "experience and training" to support the accuracy of her identification.

---

[1] ACE-V stands for analysis, comparison, evaluation and verification.

{¶6} Horning also testified that she had identified Keith's (Johnson's twin brother) left thumbprint on a plastic bag found in his house. Although she stated that family members may have similar patterns in their fingerprints, no two fingerprints are identical. When the state asked Horning if her protocol required her to compare the latent print found on the Menard's bag in the car with Keith's known print, she replied, "No. Once I made an identification I'm one-hundred percent sure that [the print on the Mendard's bag found in the car] is Kevin Johnson's prints. There would be no reason to look at another print * * *."

{¶7} Finally, Horning testified that she made a clerical error when she wrote on the outside of an evidence bag that the plastic bags contained inside were from the microwave in the house and "the second stop." (The second stop refers to the traffic stop of Johnson after police officers observed him leaving Keith's house. The "first stop" involved the stop of a different person who had left the house earlier in the day and pertained to the drugs found in Keith's home.) Horning stated that she should have written "first stop" on the evidence bag.

{¶8} At the conclusion of the trial, the jury found Johnson not guilty of the charges related to the drugs found in Keith's house but found him guilty of trafficking in and possession of the cocaine found in the car. The two counts were merged for sentencing, and the state elected to proceed on the trafficking count. The trial court imposed the mandatory 11-year prison term required by the major-drug-offender specification attached to the charges related to the drugs found in the car. *See* R.C. 2925.03(A)(2) and (C)(1)(F).

{¶9} This court affirmed Johnson's conviction in *State v. Johnson,* 1st Dist. Hamilton No. C-170354, 2019-Ohio-3877, *appeal not accepted*, 157 Ohio St.3d 1563, 2020-Ohio-313, 138 N.E.3d 1156. Represented by new counsel on appeal, Johnson raised six assignments of error, including two assignments challenging the testimony of the state's fingerprint expert and one assignment contending that his trial counsel

was ineffective. Under those assignments, Johnson argued that the trial court had erred in admitting Horning's testimony because she was not qualified to testify as an expert and the evidence-examination worksheet submitted by the state did not constitute an expert report under Crim.R. 16(K). Johnson contended that he was prejudiced by Horning's testimony because the fingerprint was the only evidence that connected him to the drugs found in the car.

{¶10} We overruled those assignments, holding that the trial court had properly qualified Horning as an expert in fingerprint analysis based on her specialized knowledge, skill, training, education, and experience and held that because the evidence-examination worksheet was not included in the record, we could not review it to determine whether it constituted an expert report under Crim.R. 16(K). We also overruled Johnson's challenge to the ineffective assistance of his trial counsel because he had not cited to any instances of alleged unprofessional conduct for us to review. *Id.* at ¶ 56.

### Postconviction Relief

{¶11} Johnson filed a timely amended petition for postconviction relief under R.C. 2953.21, asserting three grounds for relief, all of which challenged Horning's testimony. First, Johnson maintains that his conviction was void because it was based on false and misleading evidence presented by the state. Specifically, he argues that Horning's testimony presenting the science of latent-print comparison as an "unbiased and objective process" or "not a subjective process" free from error was false, and it was misleading for her to testify that she was "100% certain" that the latent print found on the Mendard's bag was Johnson's when national forensic organizations advise against using such language as it overstates the probative value of the expert's identification. In his second and third grounds, Johnson contends that his trial counsel was ineffective for failing to challenge Horning's misleading testimony with documents from reputable organizations and for failing to request a jury instruction consistent with his trial

strategy, which included challenging the reliability and credibility of Horning's testimony.

**{¶12}** In support of his grounds for relief, Johnson submitted reports from reputable sources including the National Academy of Science ("NAS") report entitled "Strengthening Forensic Science in the United States: A Path Forward," the President's Council of Advisors on Science and Technology ("PCAST") report, the Scientific Working Group on Friction Ridge Analysis, Study and Technology ("SWGFAST") guidelines, and the affidavit of Michele Triplett, a latent-print examiner certified by the International Association for Identification ("the IAI").

**{¶13}** The NAS and PCAST reports, as well as Triplett's affidavit, note that latent-print analysis, a feature-comparison method, is currently a subjective process. First, the latent-print examiner must determine if a latent print has sufficient ridge detail for comparison, and, if so, then determine what points should be compared. Next, the examiner then has to decide whether the comparison points are similar to the known print and whether there are dissimilar points that would lead to a rejection of the identification. The reports note that "confirmation bias" may result if a latent-print examiner knows she is comparing the latent print to a known suspect's print and that clerical errors result in a higher likelihood of misidentification.

**{¶14}** In an effort to bring objectivity into latent-print analysis, the reports advocate for latent-print examiners to take detailed written notes of the friction-ridge detail the examiner believes is sufficient for comparison before actually comparing it to the known print. In this way, examiners, when testifying as to an identification, will rely less on their "experience and training" to support their identifications and instead focus on clear features that can be seen by others to demonstrate a reliable identification. Both reports as well as Triplett's affidavit discuss that "experience and training" should not be used to support the accuracy of identification. Tripplet states: "Scientific conclusions are based on data, not on the person arriving at the conclusion[.] * * * Training and

6

experience allow a person to know how to arrive at a conclusion but they should not be factors of a sound scientific conclusion (i.e. a conclusion based on the abilities of the analyst would be a personal opinion, not a scientific deduction)."

**{¶15}** Additionally, Triplett, noting the SWGFAST guidelines, also testified in her affidavit that latent-print examiners should refrain from using language indicating that they are absolutely certain that their identification is correct. Specifically, she stated:

> The claim of absolute certainty is a *measure of confidence* that no other person could have made the associated impression. Absolute certainty is not a *measure of accuracy* in the conclusion. The confidence of an examiner can be inherently misleading because it may be misinterpreted as accuracy in a conclusion and therefore should not [be] considered in any scientific conclusion[.] * * * [T]he [IAI] sent out a statement recommending that members no longer testify to absolute conclusions or to a zero error rate.

(Emphasis added.)

**{¶16}** Finally, the PCAST report recommended giving an instruction to jurors so that they may properly consider the reliability of a latent-print examiner's testimony: "Overall, it would be appropriate to inform jurors that (1) only two properly designed studies of the accuracy of latent fingerprint analysis have been conducted and (2) these studies found false positive rates that could be as high as 1 in 306 in one study and 1 in 18 in the other study. This would appropriately inform jurors that errors occur at detectable frequencies, allowing them to weigh the probative value of the evidence."

**{¶17}** Despite the evidence submitted, the trial court denied Johnson's petition for postconviction relief on the basis of res judicata, finding that the arguments presented in his petition were arguments available to Johnson at trial or on direct appeal. Johnson now appeals that decision, bringing forth two assignments of error.

{¶18} In his first assignment, Johnson contends that the trial court abused its discretion in denying his postconviction petition without a hearing. Under this assignment, he argues that res judicata does not bar his postconviction claims because he has supported them with cogent evidence outside the record and that a hearing was required because he had presented substantive grounds for relief in his petition. We agree.

{¶19} Relief from a criminal conviction may be granted under the postconviction statutes upon proof of a constitutional violation during the proceedings resulting in that conviction. *See* R.C. 2953.21(A)(1); *State v. Powell*, 90 Ohio App.3d 260, 264, 629 N.E.2d 13 (1st Dist.1993). The petitioner bears the initial burden of demonstrating "substantive grounds for relief" through the petition, with its supporting affidavits and other documentary evidence, and the trial record. R.C. 2953.21(D). A postconviction petition is subject to dismissal without a hearing if the petitioner fails to support the petition with evidentiary material setting forth sufficient operative facts to demonstrate substantive grounds for relief. *Id.*; *State v. Pankey*, 68 Ohio St.2d 58, 59, 428 N.E.2d 413 (1981); *State v. Jackson*, 64 Ohio St.2d 107, 413 N.E.2d 819 (1980), syllabus.

{¶20} A petition for postconviction relief may also be dismissed without an evidentiary hearing when the claims raised are barred by the doctrine of res judicata. *State v. Perry*, 10 Ohio St.2d 175, 180, 226 N.E.2d 104 (1967). "Under the doctrine of res judicata, a final judgment of conviction bars a convicted defendant who was represented by counsel from raising and litigating in any proceeding except an appeal from that judgment, any defense or any claimed lack of due process that was raised or could have been raised by the defendant at the trial, which resulted in that judgment of conviction, or on an appeal from that judgment." *State v. Cole*, 2 Ohio St.3d 112, 113, 443 N.E.2d 169 (1982). In accordance with the doctrine of res judicata set forth

in *Cole,* constitutional issues cannot be considered in postconviction proceedings where those issues should have been raised on direct appeal and where the issues may be fairly determined without resort to evidence outside the record. *Id.* at 112; s*ee State v. Milanovich,* 42 Ohio St.2d 46, 325 N.E.2d 540 (1975) (holding that issues properly before a court on a petition for postconviction relief are issues which could not have been raised on direct appeal due to the fact that the evidence supporting those issues can only be found outside of the record).

{¶21} To overcome the res judicata bar, a petitioner must not only provide evidence outside the record, but that evidence must be cogent. *See State v. Smith*, 17 Ohio St.3d 98, 477 N.E.2d 1128 (1985). This means that the evidence supporting a claim must be competent, relevant and material, must be more than marginally significant, and must advance the claim beyond mere hypothesis and a desire for further discovery. *State v. Jones*, 1st Dist. Hamilton No. C-990813, 2000 Ohio App. LEXIS 6197 (Dec. 29, 2000). The evidence must show that the petitioner could not have appealed the constitutional claim based on the information in the original record. *State v. Combs*, 100 Ohio App.3d 90, 98, 652 N.E.2d 205 (1st Dist.1995).

### Res Judicata does not bar postconviction claims

{¶22} Res judicata does not operate as bar to Johnson's postconviction claims. All three claims are supported by cogent evidence outside the record. Triplett's affidavit, the PCAST and NAS reports, and the SWGFAST guidelines discuss the subjective nature of latent-print analysis, that latent-print examiners, when testifying, should refrain from using language that expresses absolute certainty in their identification, that the "experience" of latent-print examiners does not affect the accuracy of their identification and, that fingerprint identification is not infallible—studies show that errors do occur at detectable frequencies. These claims could not have been determined on direct appeal without resort to evidence outside the record because there was no evidence in the original trial record showing that Horning's

testimony was misleading or false. Although the state, citing *State v. Franklin*, 1st Dist. Hamilton No. C-930760, 1995 Ohio App. LEXIS 183 (Jan. 25, 1995), argues res judicata is applicable here because some of the evidence was in existence at the time of trial, the record demonstrates that Johnson's claims could not have been "fully litigated" on direct appeal without resort to evidence outside the record. *See Combs* at 97 ("[t]o overcome the res judicata bar, the evidence offered outside the record must show that the petitioner could not have appealed the constitutional claim based upon information in the original trial record"). Finally, contrary to the state's assertion, Johnson is not, as on direct appeal, challenging Horning's status as an expert, but instead is challenging the credibility of her testimony given that she has been qualified as an expert.

### Substantive grounds for relief presented

{¶23} Substantive grounds for relief exist and a hearing is warranted if the petitioner produces sufficient credible evidence that demonstrates the petitioner suffered a violation of his constitutional rights. *State v. Calhoun*, 86 Ohio St.3d 279, 283, 714 N.E.2d 905 (1999). Moreover, before a hearing is warranted, the petitioner must demonstrate that the claimed "errors resulted in prejudice." *Id.*

{¶24} A conviction obtained through false or misleading evidence is a violation of a defendant's Fourteenth Amendment due-process rights to a fair trial. *State v. Ojile*, 1st Dist. Hamilton Nos. C-110677 and C-110678, 2012-Ohio-6015, ¶ 80, citing *Kyles v. Whitley*, 514 U.S. 419, 433, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995). Here, Johnson submitted Triplett's affidavit as well as the SWGFAST guidelines demonstrating that Detective Horning's testimony that she was "100% certain" in her identification of Johnson's print was misleading to the extent that it overstated the probative value of her identification. Johnson also submitted the PCAST and NAS reports to demonstrate that Horning's testimony that latent-print analysis is essentially an objective, error-free process was false. Johnson contends that he

suffered prejudiced from this false and/or misleading testimony because the fingerprint evidence was pivotal to his conviction. We agree that the fingerprint evidence was pivotal. This court, when reviewing the sufficiency of the evidence underlying his conviction specifically relied on the fact that Johnson's fingerprint was found on the Menard's bag where the drugs had been contained. Thus, any unchallenged testimony that may have misled the jury about the accuracy of the print identification would be prejudicial as that was an important piece of evidence connecting Johnson to the drugs in the car.

{¶25} Where ineffective assistance of counsel is alleged in a petition for postconviction relief, the defendant, in order to secure a hearing on his petition, must proffer evidence which, if believed, would establish not only that his trial counsel had substantially violated at least one of a defense attorney's essential duties to his client but also that said violation was prejudicial to the defendant. *Cole,* 2 Ohio St.3d at 113-114, 443 N.E. 2d 169. "To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraph three of the syllabus.

{¶26} Here, Johnson submitted evidence that his trial counsel acted ineffectively (1) by failing to confront Detective Horning with reputable sources that contradicted her testimony as to the objective nature of latent-print analysis and her absolute certainty that her identification of the fingerprint was correct, and (2) by failing to request a jury instruction explaining that errors in fingerprint identification do occur at detectable frequencies. In light of trial counsel's attempts throughout the trial to challenge Detective Horning's testimony, we cannot think of a valid reason why counsel failed to confront Horning with reputable publications that contradicted and/or undermined her testimony or failed to request a jury instruction about known

error rates in fingerprint identification. Because the fingerprint identification was a critical piece of evidence that connected Johnson to the drugs found in the car, there is a reasonable probability that but for counsel's deficient performance, the result of the trial may have been different.

**{¶27}** Because Johnson's petition sets forth on its face substantive grounds for relief, and because those grounds are supported by cogent evidence outside the record, we hold that the trial court abused its discretion by denying Johnson's petition without first holding an evidentiary hearing. *See State v. Gondor,* 112 Ohio St.3d 377, 2006-Ohio-6679, 860 N.E.2d 77, ¶ 58. The first assignment of error is sustained.

**{¶28}** Our resolution of the first assignment of error renders Johnson's second assignment moot, as it also challenges, for different reasons, the trial court's failure to hold an evidentiary hearing on the merits of Johnson's petition.

### Conclusion

**{¶29}** Because res judicata does not operate to bar Johnson's postconviction claims and because Johnson satisfied his initial burden of demonstrating substantive grounds for relief, we reverse the judgment of the common pleas court, and remand this matter to the trial court for a hearing on the merits of Johnson's petition.

Judgment reversed and caused remanded.

CROUSE, J., concurs.
MYERS, P.J., concurs in judgment only.

Please note:

The court has recorded its own entry on the date of the release of this opinion.