[Cite as *State v. Early*, 2025-Ohio-833.]

**COURT OF APPEALS OF OHIO**

**EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA**

STATE OF OHIO,                              :

    Plaintiff-Appellee,                 :

                                  Nos. 113985 and 113986

    v.                                          :

JULIAN EARLY,                               :

    Defendant-Appellant.              :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** REVERSED AND REMANDED
**RELEASED AND JOURNALIZED:** March 13, 2025

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case Nos. CR-23-684298-A and CR-23-685379-A

---

*Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Michael Stechschulte and Karen Greene, Assistant Prosecuting Attorneys, *for appellee.*

John F. Corrigan, *for appellant.*

KATHLEEN ANN KEOUGH, J.:

{¶ 1} In this consolidated appeal, Julian Early appeals his convictions and sentence following a jury trial. For the reasons that follow, this court reverses his convictions and remands for a new trial.

## I. Procedural Background

{¶ 2} In an August 2023 indictment filed under Cuyahoga C.P No. CR-23-684298-A, the State charged Early with aggravated burglary (Count 1), burglary (Count 2), domestic violence (Count 3), and criminal damaging or endangering (Count 4) (collectively "August indictment"). The charges stemmed from an August 13, 2023 incident with B.S. (Early's ex-wife) and their minor children at B.S.'s home.

{¶ 3} In a September 2023 indictment filed under Cuyahoga C.P. No. CR-23-685379-A, the State charged Early with abduction (Counts 1 and 5), burglary (Count 2), intimidation of a crime victim or witness (Count 3), endangering children (Counts 4 and 9), grand theft (Count 6), and failure to comply (Counts 7 and 8) (collectively "September indictment"). The charges arose from two separate, yet interrelated incidents. The first involved Early's girlfriend and her minor child, whom Early is not the father. The second incident involved B.S. and one of her and Early's minor children.

{¶ 4} The parties agreed that the cases would be consolidated for trial and the counts in the September indictment (case No. CR-685379) would be renumbered, so that Count 1 of that indictment would be presented to the jury as Count 5 and sequentially continuing with indicted Count 9 being presented to the jury as Count 13.

### A. Jury Trial

{¶ 5} The State presented the following relevant evidence at trial.

{¶ 6} On August 13, 2023, B.S. called 9-1-1, reporting that Early, her ex-husband and father of her children, broke into her home, stole her car, and took their two-year-old daughter. In the recorded 9-1-1 call that was played for the jury, B.S. repeatedly told the dispatcher that she had a "restraining order against him," and when he left in her car, she yelled to Early that he was "getting a kidnap charge, I promise you." During her trial testimony, B.S. admitted that Early lived with her. She further attempted to recant her allegations, contending that Early did not break into her home or kidnap their child. She stated that she fabricated the story because she discovered that Early had a new girlfriend, L.B., and thus wanted to "destroy [Early's] life." (Tr. 491.)

{¶ 7} On August 16, 2023, L.B. called 9-1-1 to report that Early stole her silver Audi vehicle and kidnapped her daughter, who was seated inside of the vehicle. She reported to police that she left her daughter inside of her car with Early's mother while she went inside of the hotel to retrieve her belongings. L.B. told police that when she exited the hotel, Early's mother told her that Early drove off in her vehicle, with her minor daughter. During her trial testimony, L.B. admitted that Early implored her during a jail call to tell the police that he had permission on that day to take her car and her minor child.

{¶ 8} B.S. also called the police against Early on August 16, 2023, reporting that Early "broke the restraining order" by entering her house and taking their daughter, and then leaving in a silver Audi. In the recorded 9-1-1 call, B.S. can be heard telling the dispatcher that Early "broke the restraining order." In the

call, she stated that Early took their daughter because he discovered that she reported the August 13, 2023 incident.

{¶ 9} Officer Anthony Estremera testified that he and his partner, Officer Zachary Banks, responded to B.S.'s home on August 16, 2023, and that he called Early's cell phone. Officer Estremera's body camera recorded the content of the conversation during which the officer advised Early that he needed to return his child because the protection order prohibited him from being with his daughter. Even though Early returned to the area as advised, he disregarded police commands to exit his vehicle and subsequently led police on a high-speed chase with his child and L.B.'s child still inside the vehicle. Early escaped apprehension, but police arrested him approximately a month later on the warrant issued in these cases.

{¶ 10} Detective Nicole Corea testified that she was assigned to investigate the August 13, 2023 incident and discovered that a protection order issued from Cleveland Municipal Court prohibited Early from contacting B.S. and their minor children. During her testimony, the State introduced the temporary protection order, exhibit No. 10(B), and additional documents related to Early's prior misdemeanor charges and conviction. These exhibits were admitted into evidence without objection and submitted to the jury for their deliberations.

**B. The Verdict**

{¶ 11} Regarding case No. 684298 (the August indictment), the jury found Early not guilty of aggravated burglary, domestic violence, and criminal damaging

or endangering, but guilty of burglary, as charged and presented to the jury in Count 2. Regarding case No. 685379 (the September indictment), the jury found Early not guilty of burglary (renumbered Count 6), but guilty of the remaining counts — two counts of abduction (renumbered Counts 5 and 9), two counts of endangering children (renumbered Counts 8 and 13), two counts of failure to comply (renumbered Counts 11 and 12), and each count of intimidation of a crime victim or witness (renumbered Count 7) and grand theft (renumbered Count 10). The trial court sentenced Early to a stated minimum term of 9 years with a maximum term of 10 years and six months in prison.[1]

{¶ 12} This appeal followed.

## II. The Appeal

{¶ 13} Early raises four assignments of error, asserting that (1) he was deprived of a fair trial when the State relied on an expired protection order in support of its case; (2) the trial court admitted improper hearsay evidence; (3) insufficient evidence supports his conviction for abduction in renumbered Count 9; and (4) his counsel was ineffective for failing to object to the admissibility of the expired protection order. For ease of discussion, this court will address these assignments of error out of order and together where appropriate.

---

[1] The aggregate prison sentence included sentences imposed in Cuyahoga C.P. Nos. CR-23-688782 and CR-24-686386 — unrelated cases in which Early entered guilty pleas after the jury rendered its verdict in the instant cases. Those cases are not subject to this appeal.

**A. Sufficiency of the Evidence**

{¶ 14} In his second assignment of error, Early contends that the State presented insufficient evidence to support his conviction of abduction, as charged in Count 5 of the September indictment, but submitted to the jury as Count 9.

{¶ 15} The test for sufficiency requires a determination of whether the prosecution met its burden of production at trial. *State v. Cottingham*, 2020-Ohio-4220, ¶ 32 (8th Dist.). An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Id.*

{¶ 16} Count 5 of the September indictment charged Early with abduction, in violation of R.C. 2905.02(A)(1). The charge provided that on August 16, 2023, Early "did, without privilege to do so, knowingly, by force or threat, remove [L.B.'s minor child] from the place where she was found." R.C. 2901.01(A)(1) defines force as "*any* violence, compulsion, or constraint physically exerted by any means upon or against a person or *thing*." (Emphasis added.)

{¶ 17} The evidence adduced at trial showed that Early knowingly drove off in L.B.'s vehicle in which her minor child was seated in the backseat. L.B. testified

that Early did not have permission or privilege to take her vehicle, nor did she give him permission to take custody of her minor child when he left with the child in the backseat.

{¶ 18} This court has held that the physical act of driving a child away from the place where she was found satisfies the "force" element for abduction. *State v. Harrell*, 2022-Ohio-3740, ¶ 31 (8th Dist.), citing *State v. Haynes*, 2020-Ohio-6977, ¶ 34 (6th Dist.), *rev'd on other grounds*, *State v. Haynes*, 2022-Ohio-4473; *see also State v. Laraby*, 2005-Ohio-5260 (6th Dist.). Accordingly, Early's conduct in knowingly driving away from the hotel with L.B.'s minor child inside the vehicle was a sufficient use of force.

{¶ 19} Viewing the evidence in favor of the State, we find that sufficient evidence supports Early's conviction of abduction, as charged in Count 5 of the September indictment, and as renumbered for trial as Count 9. The assignment of error is overruled.

## B. The Effect of the Expired Temporary Protection Order

{¶ 20} Prior to trial, the State advised the court that it intended to introduce three exhibits supporting its prosecution, including that Early was prohibited from contacting B.S. or their minor children. Exhibit No. 10(A) was a certified copy of the June 12, 2023 judgment entry of conviction entered in Cleveland M.C. No. 2022-CRB-010473 ("municipal case"), revealing that Early was convicted of menacing. Exhibit No. 10(B) was a certified copy of the temporary protection order ("protection order") that was granted in the municipal case, demonstrating that

B.S. and their children were protected parties; that Early was prohibited from contacting them; and that Early signed the document in December 2022, acknowledging receipt of the order. Exhibit No. 10(C) was a certified copy of the municipal case summary printout revealing the case information and events and orders of the court. (Tr. 47.) Early's counsel stipulated to the exhibits' authenticity and raised no objection. *Id.*

{¶ 21} Throughout the trial, the jury heard multiple witnesses testify about exhibit No. 10(B), the existence of the protection order, and that this protection order was in effect on August 13 and August 16, 2023. Additionally, the jury heard 9-1-1 calls from B.S. wherein she advised the 9-1-1 dispatcher that Early was violating the protection order against him. Finally, in observing video evidence, the jury heard police officers relaying information that Early was subject to a valid protection order, including advising Early through a phone conversation that he was prohibited from taking his child because of the protection order.

{¶ 22} At the close of evidence, the State reiterated that the parties stipulated to exhibit Nos. 10(A), (B), and (C) — "the parties have stipulated to their admissibility, their authenticity, the identity of the individuals these exhibits concern." (Tr. 577.) Defense counsel agreed and offered no objection to the admission of those exhibits. *Id.*

{¶ 23} During closing argument, the State focused on the protection order, exhibit No. 10(B), telling the jury, "[Y]ou're talking whether Mr. Early knows that he's not allowed to be around [B.S.], he's not allowed to be around the kids. You're

going to be able to look at that and see that that exists, if you find that exhibit to be credible." (Tr. 700.)

{¶ 24} During the State's final rebuttal closing, the State fixated on the events with B.S. on August 16, 2023, that the "[p]rotection order is still in effect. Still says you can't be near [Early's minor child]. Can't be near [B.S.]." (Tr. 715-716.) The State then replayed the 9-1-1 call wherein B.S. had stated repeatedly that she has a protection order against Early. The State then replayed Officer Estremera's body camera video during which the officer had a telephone conversation with Early that the protection order prohibited him from being with his child. (Tr. 718.) The State concluded by commenting:

> You heard it, folks. Yeah, he took his kids. Protective order be damned. He took his kids because he, the defendant, deemed [B.S.] to be an unfit mother. The officer is advising him in real time. That's not how this works. There's a protective order. You cannot be around these children right now.

(Tr. at *id*.)

{¶ 25} Early contends in his first assignment of error that he was denied due process because he was tried on false evidence because the protection order had expired before the events on August 13 and 16, 2023. He contends in his fourth assignment of error that he was prejudiced by ineffective assistance of trial counsel for failing to recognize that the protection order had indeed expired.

{¶ 26} The State concedes that the protection order expired on June 8, 2023, but it did not discover this information until this appeal.[2] Nevertheless, the State contends that the introduction and reliance on exhibit No. 10(B) was neither plain error nor prejudicial. This court disagrees.

{¶ 27} Reversal of a conviction for ineffective assistance of counsel requires that the defendant show that counsel's performance was deficient and that the deficient performance prejudiced the defense, depriving the defendant of a fair trial. *State v. Guffie*, 2024-Ohio-2163 ¶ 89 (8th Dist.), citing *State v. Hanna*, 2002-Ohio-2221, ¶ 109. Deficient performance occurs when counsel's performance falls below an objective standard of reasonable representation. *State v. Bell*, 2017-Ohio-7168, ¶ 23 (8th Dist.). Prejudice is found when "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland v. Washington*, 466 U.S. 668, 694 (1984).

{¶ 28} Crim.R. 52(B) affords a reviewing court discretion to correct plain errors, notwithstanding the defendant's failure to object and bring those errors to the attention of the trial court. It is well-established that to qualify for plain-error relief, the defendant must establish that (1) an error (i.e., a deviation from a legal

---

[2] Although the municipal court judgment entry shows that the sentencing hearing date occurred on June 8, 2023, the file stamp bears the date June 12, 2023, and exhibit No. 10(C) shows subsequent sentencing docket entries on June 12, 2023.

rule) occurred, (2) the error was plain (i.e., obvious), and (3) the error affected the defendant's substantial rights. *State v. Rogers*, 2015-Ohio-2459, ¶ 22. A defendant is also required to demonstrate a reasonable probability that the error resulted in prejudice — the same deferential standard for reviewing ineffective assistance of counsel claims. *Id.*, citing *United States v. Dominguez Benitez*, 542 U.S. 74, 81-83 (2004).

{¶ 29} In this case, Early clearly established that an error occurred and it was obvious. The State introduced a stipulated exhibit that was offered to prove that a valid, in-effect protection order prohibited Early from contacting B.S. and their children. The protection order, however, expired two months prior to the August incidents. Exhibit No. 10(B), the protection order, clearly states:

> 18. THIS ORDER IS EFFECTIVE until the occurrence of one of the following: (1) it is modified by this Court; or (2) the criminal proceeding arising out of the complaint upon which this Order were issued *is disposed* by this Court or by the court of common pleas to which the Defendant is bound over for prosecution; or (3) a court issues a Domestic Violence Civil Protection Order ("CPO") arising out of the same activities as those that were the basis of the complaint filed in this action.

(Emphasis added.) *See also* R.C. 2919.26(E)(2)(a) (temporary protection order effective until the disposition of the case in which the protection order was issued).

{¶ 30} Early's misdemeanor case from which the protection order originated was disposed of by the municipal court in June 2023 — a fact that the State now concedes. A simple reading by the parties would have revealed that the protection order was not in effect at the time of the offenses. Accordingly, the State's

introduction and the trial court's admission of exhibit No. 10(B) to prove that Early acted in violation of the protection order was a plain, obvious error.

{¶ 31} Early has also established that the error affected his substantial right to a fair trial. A conviction obtained through false or misleading evidence is a violation of a defendant's Fourteenth Amendment due-process rights to a fair trial. *State v. Johnson*, 2022-Ohio-1739, ¶ 24 (1st Dist.), citing *State v. Ojile*, 2012-Ohio-6015, ¶ 80 (1st Dist.), citing *Kyles v. Whitley*, 514 U.S. 419, 433 (1995). In this case, the State used the protection order to prove the elements of at least two offenses upon which Early was convicted — burglary (Count 2) and abduction (renumbered Count 5)

{¶ 32} Count 1 of the September indictment (renumbered Count 5) charged Early with abduction, in violation of R.C. 2905.02(A)(1), which provided that on August 16, 2023, Early "did, without privilege to do so, knowingly, by force or threat, remove [his minor child] from the place where she was found." Count 2 of the August indictment charged Early with burglary, in violation of R.C. 2911.12(A)(1), which provided that on August 13, 2023, Early "did, by force, stealth, or deception, trespass, as defined in [R.C.] 2911.21(A)(1), in an occupied structure . . . when another person . . . was present, with purpose to commit in the structure any criminal offense, to wit: domestic violence."[3] "Trespass," as defined in R.C. 2911.12(A)(1) provides in relevant part, that "no person, without privilege . . . ."

---

[3] During deliberations, the jury submitted a question asking whether "any criminal offense" could also be a "violation of protective order."

Accordingly, for each of these offenses, the State was required to prove that Early acted "without privilege."

{¶ 33} In arguing that Early acted "without privilege," the State focused on the fact that the protection order prohibited Early from contacting B.S. and their children and from being in their presence, and, thus he violated that order when Early entered B.S.'s home and left with his minor child. Accordingly, because the protection order had expired, the State used false and misleading evidence, which violated Early's substantial right to a fair trial.

{¶ 34} Having found that the introduction of the expired protection order was a plain, obvious error that affected Early's substantial rights, we therefore find that counsel's conduct for failing to object and in fact, stipulating to this exhibit constituted deficient performance such that counsel's performance fell below an objective standard of reasonable representation. Courts have also recognized that an attorney's failure to know the law can lead to deficient performance. *See, e.g., Smith v. Dretke*, 417 F.3d 438, 442 (5th Cir. 2005) ("failing to introduce evidence because of a misapprehension of the law is a classic example of deficiency of counsel"); *People v. Pugh*, 157 Ill.2d 1, 19 (1993) ("counsel's advice, based upon a misapprehension of the law, fell outside the range of competence demanded of attorneys in criminal cases").

{¶ 35} Under both plain error review and the *Strickland* standard, this court must further find that the error and counsel's performance was prejudicial to Early's defense. "The final consideration in the plain-error analysis is whether

correcting the error is required to prevent a manifest miscarriage of justice or whether the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." (Citations omitted.) *State v. Bond*, 2022-Ohio-4150, ¶ 35. Under *Strickland*, prejudice is found when "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

{¶ 36} Although the jury also found Early guilty of offenses that did not involve B.S. or her and Early's children, the false and misleading protection order permeated the entire trial where this court can say with certainty that the error and counsel's deficient performance undermined the confidence in the outcome and affected the fairness and integrity of the trial. We find that a reasonable probability exists that the proceedings would have been different, at a minimum on the abduction offense as charged as Count 1 in the September indictment, and the burglary offense as charged in Count 2 in the August indictment.

{¶ 37} Accordingly, we recognize plain error, find that Early was deprived of effective assistance of counsel, and thus reverse his convictions and remand the cases for a new trial. His first and fourth assignments of error are sustained.

## III. Conclusion

{¶ 38} Finding merit to Early's first and fourth assignments of error, we reverse his convictions and remand for a new trial on Count 2, as charged in case

No. 684298, and Counts 1 and 3 through 9, as charged in case No. 685379.[4]  His third assignment of error challenging the admission of hearsay evidence at trial is hereby rendered moot.  *See* App.R. 12(A)(1)(c).

{¶ 39} Judgment reversed and remanded for a new trial.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

KATHLEEN ANN KEOUGH, JUDGE

EILEEN A. GALLAGHER, A.J., and
LISA B. FORBES, J., CONCUR

---

[4] For clarification, Counts 1 and 3 through 9 in case No. 685379 were renumbered for trial and presented to the jury as Counts 5 and 7 through 13.  As such, the trial court's judgment entry of conviction reflects the counts as renumbered.