[Cite as *In re M.R.*, 2025-Ohio-4529.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## LAKE COUNTY

IN THE MATTER OF:

M.R., DELINQUENT CHILD

CASE NO. 2025-L-004

Criminal Appeal from the
Court of Common Pleas,
Juvenile Division

Trial Court No. 2024 DL 00468

## OPINION AND JUDGMENT ENTRY

Decided: September 29, 2025
Judgment: Affirmed

*Charles E. Coulson*, Lake County Prosecutor, *Teri R. Daniel* and *Joshua M. Knauf*, Assistant Prosecutors, Lake County Administration Building, 105 Main Street, P.O. Box 490, Painesville, OH 44077 (For Appellee, State of Ohio).

*Mandy J. Gwirtz*, 20050 Lakeshore Boulevard, Euclid, OH 44123 (For Appellant, Angela Robinson).

JOHN J. EKLUND, J.

{¶1} Appellant-Mother, Angela Robinson, appeals the adjudication of delinquency for her son, M.R., DOB 2-19-2008, in the Lake County Court of Common Pleas, Juvenile Division. After a bench trial, M.R. was adjudicated delinquent on three counts of Rape, one count of Attempted Rape, and one count of Abduction.

{¶2} Appellant raises two assignments of error, arguing that trial counsel provided ineffective assistance by failing to file a motion to suppress un-Mirandized statements M.R. made to investigators outside the presence of a guardian and that M.R.'s conviction is against the manifest weight of the evidence.

{¶3} Having reviewed the record and the applicable caselaw, we find Appellant-Mother's assignments of error to be without merit. Trial counsel's failure to file a motion to suppress M.R.'s interview with a police detective despite the lack of a *Miranda* warning did not rise to the level of plain error because the failure did not affect the outcome of the trial. Second, even without consideration of M.R.'s interview, the manifest weight of the evidence supports the trial court's adjudication of delinquency on each count against M.R.

{¶4} Therefore, the judgment of the Lake County Court of Common Pleas, Juvenile Division, is affirmed.

## Substantive and Procedural History

{¶5} On May 15, 2024, a Complaint was filed charging M.R. with four counts of Rape, first-degree felonies in violation of R.C. 2907.02(A)(1)(b); four counts of Gross Sexual Imposition, third-degree felonies in violation of R.C. 2907.05(A)(4); and one count of Abduction, a third-degree felony in violation of R.C. 2905.02(A)(2). M.R. pled not true to the charges in the Complaint.

{¶6} On October 28, 2024, the matter proceeded to a bench trial. The following facts and evidence were adduced at trial:

{¶7} The State called C.V., DOB 12-30-2013. The transcript of C.V.'s testimony contains many inaudible portions. In addition, C.V. was hesitant to describe events in detail, and his descriptions were often imprecise and colloquial, reflecting a young person's understanding of physical anatomy. However, the facts to which he testified were clear, and he identified M.R. as the perpetrator of several acts of abuse.

{¶8} C.V. said that M.R. is his older cousin and that the two lived together for a short time. C.V. said that M.R. engaged in anal intercourse with him one time near the

dumpster in the trailer park where they were living. He also said that M.R. had C.V. perform fellatio. C.V. said this occurred when he was in the second, third, or fourth grade.

{¶9} He said that "the same stuff happened" on another occasion where M.R. attempted to engage in anal intercourse with him after he left the bathroom, but C.V. testified to the effect that there was no penetration. C.V. said that M.R. was holding him and that he was unable to get out of his grip. He said this event occurred while the two were still living in the same home.

{¶10} C.V. related an incident that occurred at a playground during a youth baseball game and said that M.R. again used force to hold him and engage in anal intercourse with him.

{¶11} Finally, C.V. said that another incident occurred at a different cousin's house during a sleepover. C.V. said that he was asleep on a bean bag and M.R. covered his mouth and engaged in anal intercourse with him.

{¶12} C.V.'s mother, Tiffany Rostocil, testified that C.V. told her that M.R. had hurt him and that she went to the police to make a report about what C.V. said.

{¶13} Haley Bruck, formerly a Child Advocacy Program Manager with Geauga County Job and Family Services, testified that she interviewed C.V. On cross-examination, Bruck was asked if C.V. knew why he was talking with Bruck, and Bruck said that C.V. told her it was because he had been raped. On re-direct examination, Bruck explained what C.V. had told her during the interview, including details about M.R. being the perpetrator and the locations of where the abuse had happened. However, C.V. felt uncomfortable talking to Bruck about specifics and asked to talk to a male child advocate.

Case No. 2025-L-004

{¶14} Scott Christopher, an investigator for the Geauga County Prosecutor's Office, interviewed C.V. after he asked for a male advocate.

{¶15} The State introduced the video of the interviews between C.V., Bruck, and Christopher without objection. In the video interview, C.V. related M.R.'s actions. Some of the specific details differ between the video interview and C.V's trial testimony. However, in the video interview C.V. related that M.R. sexually abused him on at least three separate incidents: once behind the dumpster, a second at a baseball game, and a third at a sleepover at a cousin's house.

{¶16} Detective Marc Christian, of the Eastlake Police Department, testified about his role investigating M.R.'s case. He said that he contacted Appellant-Mother to ask if she could bring M.R. to the police station for an interview. Appellant-Mother brought M.R. to the station for an interview. The State introduced the video interview between Detective Christian and M.R. without objection.

{¶17} Detective Christian testified that he brought M.R. into the interview room and began talking to him. He did not Mirandize him before he began the interview and did not tell him he was free to leave at any time. From the video it is apparent that the interview took place in a small room with Detective Christian and M.R. seated across from each other at a table. Detective Christian was seated on the far side of the table with M.R. nearest to what appears to be a closed door. No one else was present for the interview.

{¶18} Detective Christian testified that M.R. was initially very talkative but stopped talking after Detective Christian mentioned C.V.'s allegations of rape. During the interview, Detective Christian told M.R. multiple times that no one was in any trouble and that he just needed to know the truth. He also suggested several times that C.V. might

Case No. 2025-L-004

have been sexually aggressive or sexually curious and that M.R. needed to tell the truth to get C.V. the help he needed.

{¶19} According to Detective Christian's testimony, he asked M.R. questions for "a few minutes" before M.R. gave any kind of answer. During that time, M.R. "was just staring at me, listening to me, not saying anything." Detective Christian testified that he asked if M.R. would "feel better writing it down on a statement form and he said, 'Yes.'" Detective Christian said that the written statement form confirmed certain details about the interaction that C.V. had related.

{¶20} The video interview reflects that Detective Christian asked several times if M.R. would like to write a written statement and M.R. gave no verbal response. On one occasion, Detective Christian asked, "Is that, 'yes,' 'no,' or what?" M.R., again, did not respond. Detective Christian again encouraged M.R. to "[j]ust write what happened first at Matthew's house and then you can write what happened at the playground, at the park." He then gave M.R. a sheet of paper. M.R. did not verbally respond but did begin writing on the paper. Shortly thereafter, Detective Christian left the room.

{¶21} After M.R. completed writing, Detective Christian asked if the statement was "the truth, complete truth?" M.R., again, did not respond, and Detective Christian said, "you need to use your voice so I can hear you. I'm not a mind reader. So did this happen?" M.R., again, did not respond, and Detective Christian said, "Yes? No? What? Why did you write it if it didn't happen? So just be honest. Is this the honest truth right here?" M.R., again, did not respond.

{¶22} The video of the interview shows that after M.R. completed writing- the statement, Detective Christian asked him dozens of questions about the statement in an

Case No. 2025-L-004

attempt to get M.R. to confirm what he had written. M.R. did not respond to the majority of the questions. Detective Christian testified that M.R. nodded his head in agreement to several questions, but this is difficult to tell from the video interview. In some of the few questions that M.R. answered, he verbally admitted to incriminating activity with C.V.

{¶23} Detective Christian testified that after he completed the interview with M.R., he brought him back to Appellant-Mother, and they left the police station. He said that "about a half hour later they came back and [Appellant-Mother] said, '[M.R.] said he lied on his statement and he wants to make a new statement. None of that was true he wrote.'" The reason Appellant-Mother gave for M.R. lying on the written statement was because M.R. had to go to football practice and wanted to get out of the interview. Detective Christian said that M.R. wrote a new statement. However, Detective Christian said that both statements were lost.

{¶24} On cross-examination, Detective Christian said that M.R. was not going to be charged and was not under arrest. M.R.'s trial counsel said, "I understand he wasn't under arrest and I understand he wasn't in custody, because if he was, I would be jumping up and down about Miranda. . . . But this isn't a Miranda situation, because he wasn't under arrest."

{¶25} The State rested its case, and M.R. did not call any witnesses on his behalf.

{¶26} Appellant-Mother testified on her own behalf. She said that she received a call from Detective Christian to ask if she would bring M.R. to the police station to talk to him. She said that she "went straight to the school and got [M.R.] from school and took him straight to the police department."

Case No. 2025-L-004

{¶27} She said that after they left the police station, M.R. told her that he wrote a statement but only did so because Detective Christian would not let M.R. leave. She testified that M.R. told her that he wanted to go back to school and that he "'felt like [Detective Christian] made me write that.'" Appellant-Mother said that she went back to the police station and explained that M.R. wanted to recant his statement because M.R. felt pressured into making it.

{¶28} The trial court made a finding of true on Counts One, and Three through Nine. In addition, the trial court sua sponte amended Count Two to Attempted Rape because C.V.'s testimony described an attempted rather than completed act. The trial court found the amended Count Two true.

{¶29} On December 11, 2024, the trial court held a dispositional hearing. The trial court merged each of the Gross Sexual Imposition counts with the Rape and Attempted Rape counts and sentenced M.R. to a stayed term of institutionalization on the condition that he complied with all rules and laws and complied with community control.

{¶30} Appellant-Mother timely appealed raising two assignments of error.

## Assignments of Error and Analysis

{¶31} Appellant-Mother's first assignment of error states: "THE JUVENILE'S TRIAL COUNSEL RENDERED INEFFECTIVE ASSISTANCE IN VIOLATION OF THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTIUTION AND ARTICLE I, SECTIONS 10 AND 16 OF THE OHIO CONSTITUTION."

{¶32} In reviewing an ineffective assistance of counsel claim, the standard we apply is "'whether counsel's conduct so undermined the proper functioning of the

Case No. 2025-L-004

adversarial process that the trial cannot be relied on as having produced a just result.'" *State v. Story*, 2007-Ohio-4959, ¶ 49 (11th Dist.), quoting *Strickland v. Washington*, 466 U.S. 668, 686 (1984). An appellant must demonstrate (1) counsel was deficient in some aspect of representation, and (2) there is a reasonable probability, were it not for counsel's errors, the result of the proceedings would have been different. *Strickland* at 687, 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. A failure to "satisfy one prong of the *Strickland* test negates a court's need to consider the other." *State v. Madrigal*, 2000-Ohio-448, ¶ 49.

{¶33} An appellant "'must show that the attorney made errors so serious that he or she was not functioning as "counsel" as guaranteed by the Sixth Amendment, and . . . that he or she was prejudiced by the deficient performance.'" *Story* at ¶ 49, quoting *State v. Batich*, 2007-Ohio-2305, ¶ 42 (11th Dist.). Ohio courts presume that every properly licensed attorney is competent, and therefore a defendant bears the burden of proof. *State v. Smith*, 17 Ohio St.3d 98, 100 (1985). "Counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance." *State v. Bradley*, 42 Ohio St.3d 136, 142 (1989). "Debatable trial tactics generally do not constitute a deprivation of effective counsel." *State v. Phillips*, 1995-Ohio-171, ¶ 40. "'Failure to do a futile act cannot be the basis for claims of ineffective assistance of counsel, nor could such a failure be prejudicial.'" *State v. Henderson*, 2007-Ohio-2372, ¶ 42 (8th Dist.), quoting *State v. Shannon*, 1982 WL 5057, *2 (9th Dist. June 16, 1982).

Case No. 2025-L-004

{¶34} "'Failure to file a suppression motion does not constitute per se ineffective assistance of counsel.'" *Madrigal* at ¶ 50, quoting *Kimmelman v. Morrison*, 477 U.S. 365, 384 (1986). "'When claiming ineffective assistance due to failure to file or pursue a motion to suppress, an appellant must point to evidence in the record showing there was a reasonable probability the result of the trial would have differed if the motion had been filed or pursued.'" *State v. Walker*, 2010-Ohio-4695, ¶ 15 (11th Dist.), quoting *State v. Gaines*, 2007-Ohio-1375, ¶ 17 (11th Dist.). "'If case law indicates the motion would not have been granted, then counsel cannot be considered ineffective for failing to prosecute it.'" *Id.*, quoting *Gaines* at ¶ 17.

{¶35} Appellant-Mother argues that trial counsel was ineffective for failing to file a motion to suppress M.R.'s interview with Detective Christian. She argues that Detective Christian failed to provide *Miranda* warnings to M.R. and that the interview he conducted with M.R. amounted to a custodial interrogation. In support of her argument, she notes that M.R. was a minor being interviewed alone in a room with a police detective in a police station. She argues that Detective Christian was treating M.R. as a suspect and using interrogation techniques to obtain a confession. When M.R. did not answer Detective Christian's questions, the detective continued to ask questions.

{¶36} Appellant-Mother cites *In re O.E.*, 2023-Ohio-1946 (11th Dist.), where this Court found that the trial court had erred in denying the motion to suppress a juvenile's questioning because the totality of the circumstances demonstrated that the questioning was a custodial interrogation. *Id.* at ¶ 23. We so held because we determined that the juvenile had been brought to the police station by his mother, was questioned in a closed

interview room alone with an armed detective and that, due to his young age, would not have felt free to leave during questioning. *Id.*

{¶37} In *Miranda v. Arizona*, 384 U.S. 436, 444 (1966), "the United States Supreme Court established procedural safeguards for securing the privilege against self-incrimination guaranteed by the Fifth Amendment to the United States Constitution." *Cleveland v. Oles*, 2017-Ohio-5834, ¶ 8. Those rights guaranteed by the Fifth Amendment apply with equal force to the States by virtue of the Fourteenth Amendment. *Malloy v. Hogan*, 378 U.S. 1, 8 (1964); *see also* Ohio Const., art. I, § 10.

{¶38} However, "[t]he procedural safeguards identified in *Miranda* apply only when one is subjected to custodial interrogation." *State v. Hoffner*, 2004-Ohio-3430, ¶ 26. "A custodial interrogation is 'questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.'" *Oles* at ¶ 9, quoting *Miranda* at 444.

{¶39} "[T]he prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." *Miranda* at 444. "A suspect in police custody 'must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires.'" *State v. Lather*, 2006-Ohio-4477, ¶ 6, quoting *Miranda* at 479.

{¶40} "Any statement, question or remark which is 'reasonably likely to elicit an incriminating response' is an interrogation." *State v. Knuckles*, 65 Ohio St.3d 494, 495 (1992), quoting *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980).

{¶41} To determine whether an individual is in custody, and thus afforded the procedural safeguards outlined in *Miranda*, a court must consider "the circumstances surrounding the interrogation" and whether, under those circumstances, "a reasonable person [would] have felt he or she was not at liberty to terminate the interrogation and leave." *Thompson v. Keohane*, 516 U.S. 99, 112 (1995). "Although the circumstances of each case must certainly influence a determination of whether a suspect is 'in custody' for purposes of receiving *Miranda* protection, the ultimate inquiry is simply whether there is a 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." *California v. Beheler*, 463 U.S. 1121, 1125 (1983), quoting *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977). "A determination of whether an interrogation is custodial or non-custodial depends on the objective circumstances of the interrogation, not the subjective views held by either the officer or the person being questioned." *State v. Guzzi*, 2015-Ohio-4426, ¶ 18 (11th Dist.), citing *Stansbury v. California*, 511 U.S. 318, 323 (1994).

{¶42} Looking at the totality of the circumstances, courts apply several factors as instructive to determine whether an interview is custodial, including: "'where the interrogation occurred, whether the investigation had focused on the subject, whether the objective indicia of arrest were present, and the length of the questioning involved.'" *State v. Cheadle*, 2008-Ohio-2393, ¶ 37 (11th Dist.), quoting *State v. Scott*, 146 Ohio App.3d 233, 238 (5th Dist. 2001), citing *Stansbury* at 321. Other factors to consider include the

use of physical restraints, statements made during the interview, and whether the interviewee was released following questioning. *Howes v. Fields*, 565 U.S. 499, 509 (2012).

{¶43} The interviewee's freedom of movement is not, alone, determinative. *Id.* Instead, courts should ask "the additional question whether the relevant environment presents the same inherently coercive pressures as the type of station house questioning at issue in *Miranda*. 'Our cases make clear . . . that the freedom-of-movement test identifies only a necessary and not a sufficient condition for *Miranda* custody.'" *Id.* quoting *Maryland v. Shatzer*, 559 U.S. 98, 112 (2010).

{¶44} In addition, the Supreme Court of the United States has held a juvenile's age may be considered, so long as the juvenile's age was known to the officer at the time of questioning or would have been objectively apparent to a reasonable officer. *J.D.B. v. North Carolina*, 564 U.S. 261, 277 (2011).

{¶45} The Second District Court of Appeals has set forth the following ten factors to assess how a reasonable person would understand his or her situation:

1. What was the location where the questioning took place—i.e., was the defendant comfortable and in a place a person would normally feel free to leave? For example, the defendant might be at home as opposed to being in the more restrictive environment of a police station;

2. Was the defendant a suspect at the time the interview began (bearing in mind that *Miranda* warnings are not required simply because the investigation has focused);

3. Was the defendant's freedom to leave restricted in any way;

4. Was the defendant handcuffed or told he was under arrest;

5. Were threats made during the interrogation;

6. Was the defendant physically intimidated during the interrogation;

Case No. 2025-L-004

7. Did the police verbally dominate the interrogation;

8. What was the defendant's purpose for being at the place where questioning took place? For example, [a] defendant might be at a hospital for treatment instead of being brought to the location for questioning;

9. Were neutral parties present at any point during the questioning;

10. Did police take any action to overpower, trick or coerce the defendant into making a statement.

*State v. McCrary*, 2002 WL 125760, *2-3 (2d Dist. Feb. 1, 2002).

{¶46} In this case, the record established at trial objectively demonstrates that M.R. was subjected to custodial interrogation without the benefit of a *Miranda* warning. Appellant-Mother testified that she took M.R. out of school immediately upon being informed of the investigation. The interview was not pre-planned and scheduled, and M.R., as a minor, did not have any agency over when or whether he would appear at the police station to submit to an interview. Appellant-Mother brought M.R. to the police station, and Detective Christian engaged in an hour-long interview in a closed-door interrogation room with no other parties present.

{¶47} M.R. was the target suspect of the investigation at the time the interview began and Detective Christian misled M.R. about the existence of evidence that would implicate him by claiming that video recordings of one of the assaults existed. Detective Christian repeatedly suggested to M.R. that the purpose of his interview was to find out the truth of what had taken place between M.R. and C.V. in order to get help for C.V., who may have been acting in a sexually aggressive way to M.R. Detective Christian verbally dominated the interview, with M.R. rarely speaking.

{¶48} Detective Christian did not take any steps to ensure that M.R. knew that he was free to leave, that he could end the interview at any time, or that no matter what M.R.

said, he was going to be free to leave the police station at the end of the interview. Finally, Appellant-Mother's trial testimony suggested that M.R. did not feel free to leave the interview until he wrote a statement.

{¶49} However, for the reasons discussed in more detail below in reference to Appellant-Mother's second assignment of error, the failure to file a motion to suppress M.R.'s interview does not warrant reversal. Even without considering Detective Christian's testimony and his interview with M.R., the outcome of the trial would have been the same. C.V.'s testimony was clear and credible. His trial testimony, video statement, and the testimony of the child advocates supported the finding of true as to each of the charges against M.R.

{¶50} Accordingly, Appellant-Mother's first assignment of error is without merit.

{¶51} Appellant-Mother's second assignment of error states: "THE ADJUDICATION OF DELINQUENCY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

{¶52} The Ohio Supreme Court has established a three-point analysis to determine whether an alleged error affected the substantial rights of an appellant and requires a new trial:

> The reviewing court must ascertain (1) whether the defendant was prejudiced by the error, i.e., whether the error had an impact on the verdict, (2) whether the error was not harmless beyond a reasonable doubt, and (3) whether, after the prejudicial evidence is excised, the remaining evidence establishes the defendant's guilt beyond a reasonable doubt.

*State v. Arnold*, 2016-Ohio-1595, ¶ 50.

{¶53} When evaluating the weight of the evidence, we review whether the inclination of the greater amount of credible evidence, offered in a trial, to support one

Case No. 2025-L-004

side of the issue rather than the other indicated clearly that the party having the burden of proof was entitled to a verdict in its favor, if, on weighing the evidence in their minds, the greater amount of credible evidence sustained the issue which is to be established before them. *State v. Thompkins*, 1997-Ohio-52, ¶ 24. "Weight is not a question of mathematics but depends on its effect in inducing belief." (Emphasis deleted.) *Id*. Whereas sufficiency relates to the evidence's adequacy, weight of the evidence relates to the evidence's persuasiveness. *Id.* at ¶ 37 (Cook, J., concurring).

{¶54} The trier of fact is the sole judge of the weight of the evidence and the credibility of the witnesses. *State v. Landingham*, 2021-Ohio-4258, ¶ 22 (11th Dist.); *State v. Antill*, 176 Ohio St. 61, 67 (1964). The trier of fact may believe or disbelieve any witness in whole or in part, considering the demeanor of the witness and the manner in which a witness testifies, his or her interest, if any, in the outcome of the case, and his or her connection with the prosecution or the defendant. *Landingham* at ¶ 22*.* This Court, engaging in the limited weighing of the evidence introduced at trial, is deferential to the weight and factual findings made by the factfinder. *State v. Brown*, 2003-Ohio-7183, ¶ 52 (11th Dist.). The reviewing court "determines whether . . . the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed, and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983).

{¶55} A finding that a judgment is supported by the manifest weight of the evidence necessarily means the judgment is supported by sufficient evidence. *State v. Arcaro*, 2013-Ohio-1842, ¶ 32 (11th Dist.).

{¶56} R.C. 2907.02(A)(1) provides that "[n]o person shall engage in sexual conduct with another when any of the following applies: . . . (b)The other person is less than thirteen years of age, whether or not the offender knows the age of the other person."

{¶57} R.C. 2907.01(A) defines "sexual conduct" to mean "vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse."

{¶58} R.C. 2923.02(A) provides that "[n]o person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct that, if successful, would constitute or result in the offense."

{¶59} R.C. 2905.02(A) provides that "[n]o person, without privilege to do so, shall knowingly do any of the following: . . . (2) By force or threat, restrain the liberty of another person under circumstances that create a risk of physical harm to the victim or place the other person in fear . . . ."

{¶60} In criminal cases, the essential elements of an offense do not require proof of precise dates and times when they occurred. *In re J.D.*, 2022-Ohio-2334, ¶ 25 (11th Dist.). Proof of specific dates, times, and locations in sexual abuse cases involving children is especially difficult, and "'[t]he problem is compounded where the accused and the victim are related or reside in the same household, situations which often facilitate an extended period of abuse.'" *Id.* at ¶ 26, quoting *State v. Scott*, 2020-Ohio-3230, ¶ 40 (12th Dist.). Therefore, proof of specific dates and times of an offense may be inexact so long

Case No. 2025-L-004

as the failure to establish an offense occurred within a specific time frame would not prejudice the defendant or otherwise deny the right to a fair trial. *Id.*

{¶61} In this case, C.V.'s testimony set forth a reasonable time frame in which M.R. committed four acts of sexual abuse against him. Testimony from C.V.'s mother and the child advocates also helped to place the events within specific time frames and geographic locations. The State also established that C.V. was eight or nine years old at the time of the offenses.

{¶62} C.V. specifically identified four occasions when M.R. sexually abused him and described the nature of the sexual conduct constituting the offense of Rape with particularity. However, as to Count 2, the sexual abuse that occurred after C.V. left the bathroom, the testimony did not establish a completed criminal act but rather an attempt to commit the act. Therefore, the trial court appropriately found M.R. delinquent as to an attempt to commit a Rape offense. Finally, C.V.'s testimony established that, on at least one occasion, M.R. used force or restraint while sexually abusing him.

{¶63} Several additional factors inform our conclusion that the failure to suppress M.R.'s recorded interview was harmless and does not warrant reversal.

{¶64} "A confession is like no other evidence" and "probably the most probative and damage evidence that can be admitted against him." *Arizona v. Fulminante*, 499 U.S. 279, 296 (1991). However, this case does not involve a so-called "full confession" which set forth M.R.'s "motive and means of the crime," potentially tempting the factfinder to "rely upon that evidence alone in reaching its decision." *See id*. M.R.'s statements concerned "isolated aspects of the crime" and were only incriminating "when linked to other evidence." *See id.* In addition, the written statements M.R. made were lost and

Case No. 2025-L-004

were not admitted into evidence. M.R. was vague, evasive, and mostly non-responsive during his recorded interview with Detective Christian. The inclusion of the video interview, while improper, was not akin to the inclusion of a full confession and therefore does not carry the same risk of the factfinder relying on that evidence alone to reach a verdict. *See State v. Rahman*, 23 Ohio St.3d 146, 151 fn. 4 (1986) ("We are also mindful that our role upon review of this case is not to sit as the supreme trier of fact, but rather to assess the impact of this erroneously admitted testimony on the jury.").

{¶65} This case is also unlike S*tate v. Stacy*, 2024-Ohio-4539 (11th Dist.), where we found the failure to suppress the defendant's confession was not harmless. *Id.* at ¶ 79. There, the evidence against the defendant consisted of the victim's testimony and, importantly, "[t]he physical evidence of abuse indicated a perpetrator other than [the defendant]." *Id.* Under these circumstances, we could not presume that the confession "was without weight or effect." *Id.* Here, the victim's testimony was consistent with his prior interview with child advocates and there was no contrary physical evidence to undermine the confidence in the verdict or suggest that the factfinder would have decided differently had M.R.'s statements been suppressed. *See State v. Fitton*, 1994 WL 455634, *3 (6th Dist. Aug. 19, 1994). As discussed above in reference to Appellant-Mother's first assignment of error, even without considering M.R.'s interview with Detective Christian or any of the evidence derived therefrom, the manifest weight of the evidence supports the adjudication of delinquency against M.R. as to each count.

{¶66} Accordingly, Appellant-Mother's second assignment of error is without merit.

{¶67} For the foregoing reasons, the judgment of the Lake County Court of Common Pleas, Juvenile Division, is affirmed.

EUGENE A. LUCCI, J., concurs,

SCOTT LYNCH, J., dissents with a Dissenting Opinion.

_____

SCOTT LYNCH, J., dissents with a Dissenting Opinion.

{¶68} I respectfully dissent from the majority's opinion holding that trial counsel's failure to file a motion to suppress does not warrant reversal. It cannot be determined by this court that M.R.'s admissions to criminal activity had no impact on the trier of fact's finding of true. Given the significant effect of confessions on a fact-finder, and that the only other evidence supporting the charges were the victim's statements, it is reasonable to determine that M.R.'s admissions influenced the outcome of this case. For these reasons, the interests of justice require that this matter be remanded for additional proceedings, including a retrial at which M.R.'s confessions are excluded.

**Reasonable Probability That Result of Trial Would Have Been Different**

{¶69} The majority correctly concludes that M.R.'s interrogation was custodial and, thus, a motion to suppress this confession would have been successful. However, contrary to the majority's decision, there may have been a different outcome had the confession been suppressed since the exclusion of M.R.'s statement creates a

Case No. 2025-L-004

reasonable probability, or a "probability sufficient to undermine confidence in the outcome," *Strickland v. Washington*, 466 U.S. 668, 694 (1984), of a different result.

{¶70} The United States Supreme Court has emphasized the significant impact a confession has on the outcome of a trial. "A confession is like no other evidence. Indeed, 'the defendant's own confession is probably the most probative and damaging evidence that can be admitted against him. . . . Certainly, confessions have profound impact on the jury." (Citation omitted.) *Arizona v. Fulminante*, 499 U.S. 279, 296 (1991); *State v. Mammone*, 2014-Ohio-1942, ¶ 62. It is impossible to conclude that the trial court, as the trier of fact, did not give at least some weight to M.R.'s admissions. It is likely that the court's consideration of the victim's credibility was influenced by the corroboration from M.R.'s statements. In *State v. Fitton*, 1994 WL 455634 (6th Dist. Aug. 19, 1994), the Sixth District reached a similar conclusion. Therein, the court observed that, apart from the appellant's confession to the crimes, "[t]he only other evidence before the jury linking appellant to the crimes came from the testimony of the two [child] victims." *Id*. at *3. The court "recognize[d] the power of credible testimony from a child or adult victim" but also noted the foregoing authority from *Fulminante* regarding the impact of a confession on the jury. *Id*. Thus, it concluded that "a reasonable probability exists that the jury's decision in this case would have been different had appellant's statements . . . been suppressed." *Id*.

{¶71} Other decisions have also questioned the impact of inadmissible statements where the remaining evidence is primarily limited to a victim's testimony. In *State v. Stacy*, 2024-Ohio-4539 (11th Dist.), when considering whether the denial of a motion to suppress a defendant's confession constituted harmless error, this court found

Case No. 2025-L-004

such error since, "[a]part from the confession, the evidence against [the defendant] consists of the victims' testimony. . . . It cannot be presumed that his confession in these circumstances was without weight or effect." *Id.* at ¶ 79. *See also State v. Diaz*, 2024-Ohio-3427, ¶ 45 (6th Dist.) (the trial court's error in admitting certain testimony was not harmless in a rape prosecution because the case rested on the credibility of the victim's testimony and, thus, "the evidence of guilt was not overwhelming"). This is not to say that the victim in the present matter lacked credibility or was dishonest, but instead that the trier of fact should evaluate the victim's testimony absent any influence from M.R.'s statements of guilt.

{¶72} While the majority asserts that there was not a risk of the factfinder relying on M.R.'s admissions because they did not constitute a full confession, the record demonstrates that a finder of fact would have viewed his statements as a confession. In the interview played during trial, Detective Christian read from M.R.'s written statement while questioning him, which included statements by M.R. describing sexual conduct he engaged in with the victim behind a dumpster. It is difficult to say these admissions would not have had some influence on the trier of fact.

**Remand to Trial Court for Retrial is Necessary**

{¶73} The proper outcome in the present matter is to remand to the trial court for a new trial. This has been found to be a proper remedy both to ineffective assistance of counsel and where there was an error in failing to suppress evidence. State v. Early, 2025-Ohio-833, ¶ 37 (8th Dist.); *State v. Kirksey*, 1978 WL 215707, *5 (3d Dist.). This ensures a just outcome. Rather than guessing at the impact M.R.'s statements may have had, a new trial will ensure that these statements do not unfairly result in a conviction.

**Sensitivity to the Parties and Importance of Judicial Discipline**

{¶74} This decision is not made lightly or without consideration of the impact on all parties, especially the alleged victim. However, following a careful review of the record, as a matter of judicial discipline, this is the necessary outcome to ensure that only those facts which were constitutionally admissible are considered at trial. As was observed by Justice Clarence Thomas, a judge "must attempt to exorcise himself or herself of the passions, thoughts, and emotions that fill any frail human being," and focus on the correct application of the law. Thomas, *Judging*, 45 U.Kan.L.Rev. 1, 4 (1996).

{¶75} For the foregoing reasons, I respectfully dissent from the majority's opinion and would hold that, given the impact M.R.'s statements may have had on the outcome of trial, reversal is necessary. The interests of justice require a remand for a new trial excluding these statements.

Case No. 2025-L-004

# JUDGMENT ENTRY

For the reasons stated in the opinion of this court, Appellant's assignments of error are without merit.  It is the judgment and order of this court that the judgment of the Lake County Court of Common Pleas, Juvenile Division, is affirmed.

Costs to be taxed against Appellant, Angela Robinson.

_____
JUDGE JOHN J. EKLUND

_____
JUDGE EUGENE A. LUCCI,
concurs

_____
JUDGE SCOTT LYNCH,
dissents with a Dissenting Opinion

---

**THIS DOCUMENT CONSTITUTES A FINAL JUDGMENT ENTRY**

A certified copy of this opinion and judgment entry shall constitute the mandate pursuant to Rule 27 of the Ohio Rules of Appellate Procedure.

---

Case No. 2025-L-004